UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SJ MEDCONNECT, INC. d/b/a THALAMUS, a Delaware corporation, | |
| | C/A No.: |
| Plaintiff, | |
| v. | |
| | **COMPLAINT** |
| SHARON KREWSKY, also known as SHANNON PAPAZIAN, an individual, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff SJ MedConnect, Inc. d/b/a Thalamus ("Thalamus" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant Shannon Krewsky, also known as Shannon Papazian ("Krewsky" or "Defendant"), alleges as follows:

**PARTIES AND JURISDICTION**

1. SJ MedConnect, Inc. d/b/a Thalamus is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of California. Thalamus provides software and services to graduate medical education programs and academic medical institutions.

2. Defendant Shannon Krewsky, also known as Shannon Papazian, is an individual who, upon information and belief, resides in Myrtle Beach, South Carolina, within Horry County, South Carolina, which is within this judicial District. Krewsky was employed by Thalamus, most recently in a customer success/account management capacity, until the termination of her employment on or about April 17, 2026.

3. This Court has subject matter jurisdiction over Plaintiff's DTSA claim pursuant to 28 U.S.C. § 1331 because that claim arises under federal law, namely 18 U.S.C. § 1836(c).

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the federal claim and form part of the same common nucleus of operative facts.

5. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff, a Delaware corporation with its principal place of business outside South Carolina, and Defendant, a citizen of the State of South Carolina, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendant because she resides in this judicial District, the PIIA was entered into in connection with her employment in this District, and the acts and omissions giving rise to this Complaint occurred, in substantial part, within this District.

7. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendant resides in Horry County, South Carolina, which is within the Florence Division of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

8. A jury trial is requested for this matter.

**NATURE OF THE ACTION**

9. This is an action for breach of contract, misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"), and misappropriation of trade secrets under the South Carolina Trade Secrets Act, S.C. Code Ann. § 39-8-10 et seq. ("SCTSA"), arising from Defendant's misappropriation of Thalamus's confidential, proprietary, and trade secret information.

10. Defendant was formerly employed by Thalamus and, in connection with that employment, executed a Proprietary Information and Inventions Agreement (the "PIIA") by which she agreed to hold Thalamus's Proprietary Information in strictest confidence, not to use or disclose it except as necessary to perform her duties, and to return all such information upon termination of her employment.

11. Notwithstanding these obligations, shortly before her termination, Defendant emailed confidential Thalamus Proprietary Information to her personal email account, including private employee personal data, such as home addresses of Thalamus employees, communications with Thalamus customers, and links to password-protected customer training videos and the associated passwords.

12. Thalamus brings this action to recover damages caused by Defendant's breach of the PIIA and misappropriation of trade secrets, and to obtain injunctive relief preventing Defendant's further use, disclosure, or retention of Thalamus's confidential and trade secret information.

## FACTUAL BACKGROUND

### A. The PIIA

13. On or about July 12, 2021, in connection with the commencement of her employment with Thalamus, Krewsky executed the PIIA, a true and correct copy of which is attached as **Exhibit A**. Krewsky executed the PIIA under the name Shannon Papazian, her legal name at that time.

14. Section 4 of the PIIA defines "Proprietary Information" broadly to include "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in

confidence." "Inventions" is defined in Section 2 of the PIIA to include all "inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by [Krewsky] during the term of [her] employment with Company."

15. Section 4 of the PIIA further provides that Krewsky "will hold in confidence and not disclose or, except within the scope of [her] employment, use any Proprietary Information." This obligation survives the termination of Krewsky's employment. PIIA, Section 8.

16. Section 4 of the PIIA also requires that upon termination of employment, Krewsky "will promptly return to Company all items containing or embodying Proprietary Information (including all copies)," except for her personal compensation records, materials distributed to shareholders generally, and the Agreement itself.

17. Section 9 of the PIIA provides that any dispute in the meaning, effect, or validity of the PIIA shall be resolved in accordance with the laws of the State of South Carolina, without regard to conflicts-of-law principles. Section 9 further provides that Thalamus is entitled to injunctive relief with respect to any breach of the PIIA, in addition to any other remedies and without any requirement to post bond.

**B. Krewsky's Employment and Termination**

18. Throughout her employment, Krewsky served in a customer-facing role with Thalamus, including responsibilities related to customer success and account management, which gave her broad access to Thalamus's Proprietary Information, including internal business strategies, customer relationships, pricing and renewal information, and product roadmaps.

19. From April 6, 2026, through April 9, 2026, Thalamus hosted "Thalapalooza," its annual all-hands, week-long company retreat, in Miami, Florida. As a fully remote-first company,

Thalamus uses this event to bring together employees for business sessions, networking, and team-building. Krewsky attended the retreat.

20. On April 7 and 8, Thalamus management witnessed Krewsky and another employee, Ty Lea Gebhard ("Gebhard"), engage in unprofessional conduct that was damaging to employee morale. Other employees reported similar concerns to leadership around the same time. Because this behavior was distracting from the goal and purpose of the company meeting in person, Krewsky and Gebhard were asked to leave Thalapalooza on April 8.

21. Thalamus put Krewsky on paid administrative leave starting April 8 while Thalamus investigated the behavior.

22. Thalamus terminated Krewsky's employment on or about April 17, 2026.

23. From April 8 to the April 17 time of Krewsky's termination, she was on continuous leave with no duties and no work-related reason to access her computer or access Thalamus's computer systems.

**C. Krewsky's Misappropriation of Proprietary Information**

24. On or about April 9, 2026, while on administrative leave, Krewsky sent an email from her Thalamus email account to her personal email account, sdwalters70@gmail.com, transmitting confidential and proprietary Thalamus information without authorization.

25. The materials Krewsky transmitted to her personal email account included, among other things: (a) private employee personal data, including the home addresses of Thalamus employees; and (b) communications with Thalamus customers, including links to password-protected customer training videos and the passwords required to access those videos.

26. The PIIA expressly identifies "the identity of and information relating to customers or employees" as constituting Proprietary Information. The materials described in paragraph 22 above fall squarely within this definition.

27. These materials reflect confidential employee data, customer relationships, and customer-facing operational practices of Thalamus, and constitute Proprietary Information within the meaning of Section 4 of the PIIA.

28. Krewsky did not have authorization from Thalamus's Board of Directors, Chief Executive Officer, or any other person in a leadership position at Thalamus, to transmit this Proprietary Information to her personal email account, and such transmission was not necessary to the performance of her duties to Thalamus.

29. Upon information and belief, Krewsky retains the foregoing materials, and other Thalamus Proprietary Information, in her possession following the termination of her employment, including on personal devices, personal email accounts, and/or personal cloud storage.

**D. Thalamus's Demand and Krewsky's Continued Noncompliance**

30. On April 21, 2026, after learning of the unauthorized transmission of Proprietary Information described above, counsel for Thalamus sent Krewsky a letter (the "Demand Letter") identifying these material breaches of the PIIA and demanding, among other things, that Krewsky: (i) cease all use of Thalamus Proprietary Information she may have retained after her termination; (ii) provide a sworn declaration identifying all Thalamus Proprietary Information retained by her and any third parties with whom such information was shared; (iii) refrain from deleting, altering, or otherwise destroying any Company materials in her possession; (iv) submit her personal devices to audit by a third-party forensic consultant chosen by the Company; and (v) provide a sworn declaration, upon

Thalamus's further instruction, confirming destruction of all Company Proprietary Information and that no such information was shared with any third party.

31. The Demand Letter required a response no later than April 24, 2026.

32. Krewsky has not complied with the demands set forth in the Demand Letter and continues to retain Thalamus's Proprietary Information in violation of the PIIA.

33. Upon information and belief, Krewsky stole additional Thalamus Proprietary Information although Thalamus is currently unaware of the specific items she took. Krewsky had no work duties during her period of leave and no legitimate reason to be accessing Thalamus's computer systems. Yet during the April 8-17 period while Krewsky was on leave, she used her credentials to enter Thalamus's computer systems and cloud accounts on numerous occasions to access internal files. Not only did Krewsky access these files but she used a device that would allow her to remove them from the Company. A forensic analysis of Krewsky's laptop computer shows that she attached a personal USB device to it numerous times from April 8-17, which would have allowed her to take possession of files from Thalamus's computer systems and cloud accounts. The attachment of the personal USB device is also a violation of Thalamus's Acceptable Use policy, which policy was designed with concerns for the security of Thalamus Confidential Information. Krewsky's act of attaching a personal USB device to her laptop at a time that she had no work-related business to be accessing her laptop, Thalamus's computer systems and Thalamus's cloud accounts is evidence of exfiltration.

**FOR A FIRST CAUSE OF ACTION**
(Breach of Contract)

34. Thalamus realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

35. The PIIA is a valid and binding contract between Thalamus and Krewsky, supported by adequate consideration, including Krewsky's employment by and compensation from Thalamus.

36. Thalamus has performed all of its obligations under the PIIA, or such obligations have been excused or waived.

37. Krewsky breached Section 4 of the PIIA by, among other things, transmitting Thalamus's Proprietary Information, including private employee personal data and confidential customer communications and access credentials, to her personal email account without authorization, using and reproducing such Proprietary Information for purposes outside the scope of her employment, and failing and refusing, upon termination of her employment and upon Thalamus's demand, to return such Proprietary Information.

38. As a direct and proximate result of Krewsky's breaches of the PIIA, Thalamus has suffered, and will continue to suffer, damages in an amount to be proven at trial, including but not limited to the costs of investigating and remediating Krewsky's misappropriation of Proprietary Information.

39. Krewsky's breaches of the PIIA have caused and threaten to cause Thalamus irreparable harm for which there is no adequate remedy at law, entitling Thalamus to injunctive relief pursuant to Section 9 of the PIIA.

**<u>FOR A SECOND CAUSE OF ACTION</u>**
(Misappropriation of Trade Secrets – Defend Trade
Secrets Act, 18 U.S.C. § 1836 et seq.)

40. Thalamus realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

41. Thalamus owns trade secrets, as defined in 18 U.S.C. § 1839(3), including confidential employee personal data, customer relationships and communications, customer training

materials and access credentials, and other proprietary operational information described above, which derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from the disclosure or use of the information.

42. Thalamus has taken reasonable measures to keep this information secret, including requiring employees such as Krewsky to execute the PIIA, restricting access to confidential systems and customer information, using password-protected customer training systems, and maintaining policies restricting the use, reproduction, and disclosure of Proprietary Information.

43. Thalamus's trade secrets are used in, or intended for use in, interstate commerce, including in connection with Thalamus's provision of software and services to academic medical institutions located throughout the United States.

44. Krewsky misappropriated Thalamus's trade secrets within the meaning of 18 U.S.C. § 1839(5) by (i) acquiring Thalamus’s trade secrets by improper means—including breach of her contractual and other duties to maintain their secrecy, which 18 U.S.C. § 1839(6) expressly defines as improper means—when she transmitted them to her personal e-mail account without authorization and in violation of the PIIA; (ii) disclosing or using, or threatening to disclose or use, those trade secrets without Thalamus’s consent; and (iii) retaining those trade secrets following the termination of her employment despite Thalamus’s demand for their return or destruction. Krewsky’s continued retention of the trade secrets, her refusal to return them, and her repeated connection of a personal USB device to her Thalamus laptop while on administrative leave establish that she has used or disclosed, or imminently threatens to use or disclose, Thalamus’s trade secrets for her own benefit or the benefit of others.

45. Krewsky's misappropriation was willful and malicious, as evidenced by her surreptitious transmission of Thalamus’s trade secrets to her personal e-mail account while on administrative leave, and her continued refusal to return the trade secrets.

46. As a direct and proximate result of Krewsky's misappropriation, Thalamus has suffered, and will continue to suffer, damages in an amount to be proven at trial, and Krewsky has been unjustly enriched.

47. Krewsky's actual or threatened misappropriation of Thalamus's trade secrets has caused and threatens to cause Thalamus irreparable harm, entitling Thalamus to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

48. Thalamus is further entitled to exemplary damages and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(C)-(D) by reason of Krewsky's willful and malicious misappropriation.

**FOR A THIRD CAUSE OF ACTION**
(Misappropriation of Trade Secrets – South Carolina
Trade Secrets Act, S.C. Code Ann. § 39-8-10 et seq.)

49. Thalamus realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

50. The information described above constitutes "trade secrets" of Thalamus within the meaning of S.C. Code Ann. § 39-8-20(5), including information that derives independent economic or commercial value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public or any other persons who can obtain economic value from its disclosure or use, and that is the subject of reasonable efforts to maintain its secrecy.

51. Krewsky misappropriated Thalamus's trade secrets within the meaning of S.C. Code Ann. § 39-8-20(1) by acquiring such trade secrets through improper means and using and disclosing such trade secrets without Thalamus's express or implied consent.

52. Krewsky's misappropriation was willful and malicious.

53. As a direct and proximate result of Krewsky's misappropriation, Thalamus has suffered, and will continue to suffer, damages in an amount to be proven at trial, and Krewsky has been unjustly enriched in an amount to be proven at trial.

54. Thalamus is entitled to injunctive relief pursuant to S.C. Code Ann. § 39-8-50, exemplary damages pursuant to S.C. Code Ann. § 39-8-40 (up to twice the amount of actual damages for willful and malicious misappropriation), and reasonable attorneys' fees pursuant to S.C. Code Ann. § 39-8-80.

**FOR A FOURTH CAUSE OF ACTION**
(Breach of the Duty of Loyalty)

55. Thalamus realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

56. This Count is brought as a common law claim independent of, and in the alternative to, Thalamus's claims under the South Carolina Trade Secrets Act ("SCTSA"), S.C. Code Ann. § 39-8-10 et seq. The SCTSA's displacement provision does not bar this Count because: (a) the duty of loyalty is a duty imposed by law that is not dependent upon the existence of competitively significant secret information, as recognized in the legislative commentary to the SCTSA; and (b) to the extent any of the information Krewsky misappropriated is ultimately found not to constitute a "trade secret" within the meaning of S.C. Code Ann. § 39-8-20(5), the SCTSA affords no remedy and does not displace this common law claim. See Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007).

57. As an employee of Thalamus, Krewsky owed Thalamus a duty of loyalty, including a duty not to use her position to acquire and remove confidential company information for purposes adverse to or unauthorized by Thalamus.

58. Krewsky breached her duty of loyalty by, while still employed by Thalamus and in anticipation of the termination of her employment, secretly transmitting Thalamus's Proprietary Information, including sensitive employee personal data and confidential customer credentials, to her personal email account without authorization.

59. As a direct and proximate result of Krewsky's breach of the duty of loyalty, Thalamus has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff SJ MedConnect, Inc. dba Thalamus respectfully requests that this Court enter judgment in its favor and against Defendant Shannon Krewsky, and grant the following relief:

a. A preliminary and permanent injunction enjoining Defendant from using, disclosing, copying, or further disseminating any Proprietary Information or trade secrets of Thalamus, and ordering Defendant to return to Thalamus and/or permanently delete all copies of such Proprietary Information and trade secrets in her possession, custody, or control, including on personal devices, email accounts, and cloud storage, and to submit her personal devices and accounts to forensic inspection to confirm such return and/or deletion;

b. Compensatory damages in an amount to be proven at trial;

c. Exemplary and/or punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and S.C. Code Ann. § 39-8-40;

d. Disgorgement of any unjust enrichment realized by Defendant;

e. Disgorgement of all wages and salary paid during Krewsky's period of disloyal conduct;

f. An award of Thalamus's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D) and S.C. Code Ann. § 39-8-80;

g. Pre-judgment and post-judgment interest as permitted by law; and

h. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**GRELLAS SHAH LLP**
*Pending admission pro hac vice*

s/ Dhaivat H. Shah
Dhaivat H. Shah, Esq. (ds@grellas.com)
550 California Street, Suite 1040
San Francisco, CA 94104
408-255-6310
Attorneys for the Plaintiff

**BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A.**
*Local counsel*

s/ Benjamin A. Baroody
Benjamin A. Baroody (bbaroody@bellamylaw.com)
District Ct. I.D. No. 9442
Holly M. Lusk (hlusk@bellamylaw.com)
District Ct. I.D. No. 12487
Post Office Box 357
Myrtle Beach, SC 29578-0357
843-448-2400
Attorneys for the Plaintiff